Filed 12/15/21  P. v. Talley CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>CLINTON JOHN TALLEY,<br><br>   Defendant and Appellant. | B304017<br><br>(Los Angeles County<br>Super. Ct. No. MA065271) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shannon Knight, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.

————————————

In a prior appeal we affirmed Clinton John Talley's felony convictions for making a criminal threat and stalking and several misdemeanor convictions, reversed 16 other misdemeanor convictions as time-barred and remanded for resentencing. In this appeal following his resentencing, Talley contends the trial court abused its discretion in denying his request to dismiss a five-year prior serious felony conviction enhancement; his aggregate sentence of almost 20 years—11 years in state prison plus nearly nine years in county jail—constitutes cruel and/or unusual punishment in violation of the federal and state Constitutions; and the court's imposition of fines, fees and assessments over his objection he lacked the ability to pay them violated due process. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Talley's Convictions and His Prior Appeal*

A jury convicted Talley of two felony counts, making a criminal threat (Pen. Code, § 422)[1] and stalking (§ 646.9, subd. (a)), and 25 misdemeanor counts of violating a protective order (§ 166, subd. (c)(1)). In a bifurcated proceeding Talley waived his right to a jury trial and admitted special allegations he had suffered a prior serious or violent felony conviction under the three strikes law (§§ 667, subds. (b)-(j), 1170.12) and a prior serious felony conviction within the meaning of section 667, subdivision (a)(1). The court sentenced Talley to an aggregate state prison term of 11 years for making a criminal threat plus

---

[1] Statutory references are to this code unless otherwise stated.

5,460 consecutive days in county jail for the misdemeanor counts.[2]

On appeal we affirmed Talley's felony convictions and nine misdemeanor convictions and reversed 16 misdemeanor convictions as time-barred.  (See *People v. Talley* (Aug. 20, 2019, B281571) [nonpub. opn.].)  We remanded for resentencing so the trial court could exercise the full scope of its sentencing discretion, including considering whether to strike the section 667, subdivision (a)(1), enhancement pursuant to then-recent amendments to sections 667 and 1385 that became effective while Talley's initial appeal was pending.  (See Stats. 2018, ch. 1013, §§ 1, 2; *People v. Stamps* (2020) 9 Cal.5th 685, 693.)  We also directed the trial court to hold a hearing, if Talley requested one, to address Talley's arguments concerning his ability to pay any applicable fines, fees and assessments.

2. *Talley's Resentencing Hearing*

At resentencing the court declined Talley's request to strike the section 667, subdivision (a)(1), enhancement, concluding it was not in furtherance of justice to do so.  The court sentenced Talley to 11 years in state prison—the upper term of three years,

---

[2]    At the initial sentencing hearing the court imposed the upper term of three years for making a criminal threat (count 1), doubled under the three strikes law, plus five years for the prior serious felony conviction under section 667, subdivision (a).  The court stayed sentence on the stalking count under section 654. The court also imposed 364 days in county jail on each of misdemeanor counts 2 through 16 to be served consecutively to count 1 and to each other (for an aggregate consecutive term of 5,460 days on those misdemeanor counts) and 364 days each on misdemeanor counts 17 through 26, to be served concurrently with the criminal threat count.

3

doubled under the three strikes law, plus five years for the prior serious felony conviction under section 667, subdivision (a)(1)—plus 3,276 consecutive days in county jail (364 days for each misdemeanor offense to be served consecutively to the felony count and to each other).  The court stayed sentence on the stalking offense pursuant to section 654.

In refusing Talley's request to strike the section 667, subdivision (a)(1), enhancement and exercising its discretion to impose the misdemeanor counts consecutive to each other and to the felony count of making a criminal threat, the court stated, "The defendant's prior convictions are numerous.  His prior performance on probation has been unsatisfactory.  The court has grave concerns for the victim in this case.  The court believes that there is an excellent chance that, upon his release, Mr. Talley will make efforts to locate her to harm or even potentially kill her.  So it is the court's intention to have Mr. Talley remain in custody for the longest possible available time."

The court next addressed Talley's ability to pay fines, fees and assessments in accordance with this court's decisions in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) and *People v. Castellano* (2019) 33 Cal.App.5th 485 (*Castellano*).  Initially the court stated it intended to impose fines, fees and assessments in the same amounts as at the original sentencing hearing.  Talley's counsel objected, claiming his client was unable to pay them.  Talley's counsel asserted his client was indigent and unable to work and earn prison wages because he was legally blind and suffered from a heart problem.  He presented no evidence to support these arguments or his general assertion concerning Talley's inability to pay.  After asking about Talley's ownership of a motorcycle, which was discussed at trial, and

being told by Tally's counsel simply that Talley did not have any money, the court responded, "I'm not inclined to waive all of it. I'm not inclined to make a finding at this time of inability to pay anything.  However, I will reduce the amount of the victim restitution fund fine.  [Pen. Code, § 1202.4, subd. (b).]  It will be in the amount of $300, rather than $1,200," the amount the court had ordered at the initial sentencing hearing.  The court imposed, but stayed, a parole revocation fine in the same amount.  (Pen. Code, § 1202.45.)  In addition, the court reduced the assessment amounts imposed at the initial sentencing hearing:  It imposed an operations assessment (Pen. Code, § 1465.8) of $440, reduced from $1,040, and a court facilities assessment (Gov. Code, § 70373) of $330, reduced from $780.  Talley's counsel told the court again, "My client still cannot pay any of those fees.  This will be a burden on him when he gets out of custody."  The court acknowledged Talley's objection, but declined to change its ruling.

## DISCUSSION

1. *The Court Did Not Abuse Its Discretion in Denying Talley's Request To Dismiss the Five-year Prior Serious Felony Enhancement; Talley Has Not Demonstrated Ineffective Assistance of Counsel*

The trial court may in its discretion dismiss a prior serious felony enhancement found true under section 667, subdivision (a)(1), in furtherance of justice.  (§§ 667, subd. (f)(2); 1385, subd. (b)(1); *People v. Stamps, supra,* 9 Cal.5th at p. 693.)  In making this determination, the trial court considers "'the nature of the offense and the offender.'"  (*People v. Brugman* (2021) 62 Cal.App.5th 608, 638; accord, *People v. Shaw* (2020) 56 Cal.App.5th 582, 587 ["[s]ection 1385 allows courts to ensure

5

'that persons are sentenced based on the particular facts of the offense and all the circumstances[;] [i]t enables the punishment to fit the crime as well as the perpetrator'"]; cf. *People v. Carmony* (2004) 33 Cal.4th 367, 378 [court considers all the circumstances relating to the offense and the offender in deciding whether to dismiss in furtherance of justice a strike found true under the three strikes law].)

We review the court's decision to deny a motion to strike a five-year prior serious felony enhancement for abuse of discretion. (*People v. Brugman, supra,* 62 Cal.App.5th at p. 638; *People v. Shaw*, *supra*, 56 Cal.App.5th at p. 587.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could disagree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377; see *id.* at pp. 376-377 [absent a showing the sentencing decision was irrational or arbitrary, ""'the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review"'"].)

Talley contends the court did not address a number of relevant factors in exercising its sentencing discretion, primarily because his attorney did not present them, and argues his counsel's omissions constituted ineffective assistance of counsel. In particular, he asserts his counsel failed to argue, and thus the trial court did not consider, (a) he had committed his offenses while incarcerated and unlikely to carry out his threat to harm the victim; (b) imposition of the high term of three years, doubled under the three strikes law, adequately punished and enhanced his sentence without the additional five-year prior serious felony enhancement; (c) he suffered from mental and emotional

6

problems at the time he committed the offenses but was now benefitting from psychotropic medication; (d) he would be more than 50 years old at the time of his release even if the five-year enhancement were dismissed and studies show criminality declines significantly after age 50; (e) it was highly unlikely that Talley would risk a third strike sentence of 25 years to life by contacting the victim again, as Talley himself advised the court during the sentencing hearing; and (f) California was moving away from draconian sentencing schemes. Had his counsel made these arguments, he asserts, it is reasonably probable the court would have exercised its discretion more favorably toward Talley and dismissed the five-year serious felony enhancement.

Contrary to Talley's contention, the court, which presided over Talley's trial and original sentencing hearing, did consider Talley's criminal record, the nature of the offenses for which he was convicted, and information presented by Talley's counsel that his client was currently benefitting from psychotropic medication. In response, the court highlighted that Talley had committed his offenses while incarcerated for a similar crime against the same victim (making a criminal threat) and observed incarceration had not deterred his conduct. Considering all this evidence, the court, well acquainted with the facts of the case and Talley's background, concluded it would not be in furtherance of justice to dismiss the prior serious felony enhancement and that imposition of the longest possible authorized sentence was warranted. Nothing in this record suggests that decision was arbitrary or irrational, let alone that Talley would have received a more favorable sentence had his counsel made any of the additional arguments Talley now articulates. (See *People v. Rices* (2017) 4 Cal.5th 49, 80 [to prevail on an ineffective assistance of counsel

7

claim, the appellant bears the burden of demonstrating counsel's performance fell below an objective standard of reasonableness and counsel's deficiencies resulted in prejudice; prejudice is established by showing that, but for counsel's unprofessional errors, it is reasonably probable that the result of the proceeding would have been more favorable to the defendant]; see also *Strickland v. Washington* (1984) 466 U.S. 668, 696; *In re Champion* (2014) 58 Cal.4th 965, 1007 ["'[i]f it is easier to dispose of an ineffective[ ] [assistance of counsel] claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed'"].)

2. *Talley's Sentence Did Not Constitute Cruel and/or Unusual Punishment in Violation of the Federal or California Constitutions*

The Eighth Amendment's prohibition of cruel and unusual punishment, applicable to the states through the 14th Amendment, contains a "'narrow proportionality principle' that 'applies to noncapital cases.'" (*Ewing v. California* (2003) 538 U.S. 11, 20 (*Ewing*).) Although strict proportionality between crime and sentence is not required, "'extreme sentences that are "grossly disproportionate" to the crime'" are constitutionally prohibited. (*Id*. at p. 23; accord, *Graham v. Florida* (2010) 560 U.S. 48, 59.)

To determine whether a particular sentence is so grossly disproportionate that it violates the federal Constitution, the court considers all the circumstances of the case, including the gravity of the offense and the severity of the penalty, as well as whether more serious crimes are subject to the same penalty in other jurisdictions. (*Graham v. Florida, supra*, 560 U.S. at p. 58; *Solem v. Helm* (1983) 463 U.S. 277, 285.) No single criterion is

dispositive.  (*Solem*, at p. 290, fn. 17.)  Outside "'the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.'"  (*Id*. at pp. 289-290, quoting *Rummel v. Estelle* (1980) 445 U.S. 263, 271.)  Still, although deference is given to the Legislature's prescribed sentence for a particular crime (*Solem*, at p. 290), no penalty is per se constitutional.  (*Ibid*.)

The California Constitution's prohibition of "cruel or unusual punishment" (Cal. Const., art. I, § 17) similarly forbids punishment so disproportionate to the crime for which it was imposed that it "shocks the conscience and offends fundamental notions of human dignity."  (*In re Lynch* (1972) 8 Cal.3d 410, 424; accord, *People v. Cole* (2004) 33 Cal.4th 1158, 1235; *People v. Gomez* (2018) 30 Cal.App.5th 493, 500.)  The *Lynch* Court identified three factors for the reviewing court to consider in assessing this constitutional claim:  (1) the nature of the offense and the offender; (2) how the punishment compares with punishments for more serious crimes in the jurisdiction; and (3) how the punishment compares with the punishment for the same offense in other jurisdictions.  (*Lynch*, at pp. 425-427; see *People v. Brewer* (2021) 65 Cal.App.5th 199, 213-214.)

A claim that a particular sentence amounts to cruel and/or unusual punishment in violation of either the federal or California Constitution is a question of law subject to de novo review, while any underlying disputed facts are reviewed in the light most favorable to the judgment.  (*People v. Gomez, supra*, 30 Cal.App.5th at p. 499; *People v. Martinez* (1999) 76 Cal.App.4th 489, 496.)

Talley contends his aggregate state prison sentence of 11 years, plus effectively nine years in county jail, is so grossly

disproportionate to his crimes that it constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and cruel or unusual punishment in violation of the California Constitution. As Talley describes it, he made ambiguous statements in letters he sent to his former girlfriend that the jury wrongly interpreted as a criminal threat; as an incarcerated person at the time he committed the offense, he was unable of carrying out the threat in any event; his crimes did not involve a weapon and no one was physically hurt; the "extensive" criminal background the court cited at sentencing involved mostly misdemeanor offenses; and the letters he wrote to his girlfriend that the jury found violated the protective order were not particularly threatening. If they had been, he asserts, they would undoubtedly have been charged under section 422 (making a criminal threat). To impose consecutive sentences for each misdemeanor violation—essentially for letters and telephone calls to his former girlfriend while he was in prison—and run each violation consecutive to each other[3] and to an 11-year enhanced sentence for a nonviolent felony, he asserts, resulted in an aggregate sentence so grossly disproportionate to his crimes as to be unconstitutional.

Tally's arguments in support of the constitutional challenge to his sentence are unpersuasive. Despite Talley's efforts to minimize his conduct, Talley was convicted for both making a

---

[3]     As Talley implicitly acknowledges, the court was authorized to impose full consecutive sentences in county jail for each misdemeanor offense; a misdemeanor sentence is distinctly different from a felony sentence. (See *People v. Brown* (2016) 247 Cal.App.4th 1430, 1434; *People v. Erdelen* (1996) 46 Cal.App.4th 86, 91-92.)

criminal threat to kill his former girlfriend and stalking her, as well as for numerous violations of a protective order his former girlfriend had obtained.  We affirmed those convictions on appeal, rejecting Talley's arguments, several of which he repeats here, that they were not supported by substantial evidence.  (See *People v. Talley*, *supra*, B281571.)  As for his criminal background, in contending his past offenses were mostly misdemeanors, Talley essentially ignores his 2014 conviction for a serious felony, making a criminal threat against the same victim in this case, his most recent prior conviction.  And, although Talley insists his punishment is unfair for a "wobbler" felony, Talley's enhanced felony sentence punished him not simply for that felony, but also for his recidivism.  (*Ewing v. California, supra,* 538 U.S. at pp. 20-21; *People v. Haller* (2009) 174 Cal.App.4th 1080, 1089.)  Talley has acknowledged he has a heavy burden to demonstrate his sentence constitutes cruel and/or unusual punishment in violation of the federal and state Constitutions.  He has not come close to carrying it.[4]

---

[4]      Talley's counsel did not object at the sentencing hearing that his sentence constituted cruel and/or unusual punishment.  (See *People v. Speight* (2014) 227 Cal.App.4th 1229, 1247 [defendant who failed to object in trial court that his sentence constituted cruel and unusual punishment forfeited argument on appeal]; *People v. Norman* (2003) 109 Cal.App.4th 221, 229 [same].)  Because Talley's claim his sentence was cruel and/or unusual fails on its merits, so too does his claim his counsel was ineffective for failing to object on this ground.  (See *People v. Anderson* (2001) 25 Cal.4th 543, 587 [counsel not ineffective for failing to make futile or unmeritorious objections]; *People v. Memro* (1995) 11 Cal.4th 786, 834 [same].)

3. *Talley Failed To Demonstrate Imposition of Fines, Fees and Assessments at Sentencing Violated Due Process or That His Counsel Was Constitutionally Ineffective*

In *Dueñas, supra,* 30 Cal.App.5th 1157 we held "the assessment provisions of Government Code section 70373 and Penal Code section 1465.8, if imposed without a determination that the defendant is able to pay, . . . are thus fundamentally unfair; imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process under both the United States Constitution and the California Constitution." (*Dueñas,* at p. 1168; accord, *People v. Belloso* (2019) 42 Cal.App.5th 647, 654-655, review granted, Mar. 11, 2020, S259755.) A restitution fine under section 1202.4, subdivision (b), however, is "intended to be, and is recognized as, additional punishment for a crime." (*Dueñas*, at p. 1169; accord, *Belloso,* at p. 655.) Section 1202.4, subdivision (c), provides a defendant's inability to pay a restitution fine may not be considered a "compelling and extraordinary reason" not to impose the statutory minimum fine. To avoid a serious constitutional question if a restitution fine were to be imposed on an indigent defendant, this court held in *Dueñas* that "the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Dueñas,* at p. 1172; accord, *Belloso,* at p. 655.)

In *Castellano, supra,* 33 Cal.App.5th 485, decided two months after *Dueñas,* we clarified that, in the absence of evidence of the defendant's inability to pay, the People are not required to establish the defendant has the means to pay before the court imposes the fines, fees and assessments required by statute. (*Castellano*, at p. 490 ["a defendant must in the first

12

instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court"]; see *People v. Santos* (2019) 38 Cal.App.5th 923, 934 ["it is the defendant's burden to demonstrate an inability to pay, not the prosecution's burden to show the defendant *can* pay"].)[5]

Talley argues it violated due process for the court to impose any fines, fees or assessments on him, an indigent person. As discussed, however, it was Talley's burden to present evidence of his inability to pay the fines, fees and assessments. He failed to present any. Recognizing this evidentiary omission, Talley contends his counsel's failure to present any evidence on this point constituted ineffective assistance. However, on this silent record, it impossible to tell what, if any, evidence counsel could have presented, let alone whether it would have made any difference. For that reason alone, Talley's ineffective assistance of counsel claim necessarily fails. (See *People v. Salcido* (2008) 44 Cal.4th 93, 172 [ineffective assistance of counsel will often have to be shown by petition for habeas corpus where evidence outside the record can be introduced]; *People v. Cunningham* (2001) 25 Cal.4th 926, 1012, fn. 12 [same].)

---

[5] In *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, the Supreme Court has directed the parties to brief the following issues: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?"

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.